**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**BUZZFEED INC.,**

                         **Plaintiff,**           **21-cv-7533 (JGK)**

          **- against -**             **MEMORANDUM OPINION**
                                          **AND ORDER**

**U.S. DEPARTMENT OF JUSTICE,**

                         **Defendant.**

---

**JOHN G. KOELTL, District Judge:**

The plaintiff, BuzzFeed Inc., brought this action against the U.S. Department of Justice ("DOJ" or "the Government") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking disclosure of information contained in a report concerning misconduct by a former Executive Officer of DOJ. Each party has filed a motion for summary judgment. For the reasons explained below, BuzzFeed's motion is **denied** and DOJ's motion is **granted.**

**I.**

On July 21, 2020, the DOJ Office of the Inspector General ("OIG") posted on its website an investigative summary of a report entitled "Findings of Misconduct by a Former DOJ Executive Officer for Making Inappropriate Comments Constituting Sexual Harassment to a Subordinate on Three Occasions." Waller Decl., ECF No. 21 ¶ 3. That same day, a representative of BuzzFeed News made a FOIA request for the underlying report ("the Report"). Id. On March 17, 2021, OIG provided the 15-page

1

Report to BuzzFeed with the following categories of information

redacted pursuant to Exemptions 6 and 7(C) of FOIA, 5 U.S.C. §

552(b)(6), (b)(7)(C):

> (1) the identity of the subject of the Report, a former
> Executive Officer of a [DOJ] component, along with other
> identifying or personal information relating to the
> subject, such as the case number, the subject's Social
> Security number, the subject's office location, and the
> [DOJ] component in which the subject worked; (2) certain
> dates, including the dates of the events at issue; (3)
> the names of third-party individuals, including victims,
> as well as other identifying or personal information
> relating to the third-party individuals; (4) the name of
> the non-supervisory agent involved in the OIG
> investigation; and (5) information related to
> allegations against the subject that the OIG did not
> substantiate.

Waller Decl. ¶ 6; see id. Ex. 3 (OIG response containing

redacted Report).[1]

The Report describes OIG's investigation into several

allegations of misconduct against the former Executive Officer

("the Subject"). As summarized by OIG's FOIA officer:

> Among other things, the Report contains findings that
> the then-Executive Officer violated the [DOJ's] policy
> on sexual harassment by making inappropriate comments to
> an employee (Employee 1) on three occasions, kissing an
> employee (Employee 2) on the lips, and making
> inappropriate comments to Employee 2; and that he
> exhibited poor judgment by permitting an employee
> (Employee 3) to take his personal vehicle to a commercial
> car wash on at least two occasions and by asking a

---

[1] The former Executive Officer who is the subject of the Report was a member
of the DOJ's Senior Executive Service, and his responsibilities "involved
overseeing an office that provides administrative, financial, technical, and
other types of support to the mission of one of the [DOJ's] components, such
as procurement, information technology management, human resources, budget,
finance, facility services, the insider threat program, the continuity of
operations program, and security." Waller Decl. ¶ 16.

subordinate (Employee 4 or Employee 5) to drive [] him
somewhere on purely personal business on approximately
six occasions.

Waller Decl. ¶ 12.

BuzzFeed administratively appealed OIG's decision to redact
the identity of the Subject, the Subject's office location, and
the effective date of the Subject's retirement, but the appeal
was denied. Id. ¶ 7. The plaintiff filed this action on
September 9, 2021, challenging only OIG's decision to redact the
information regarding the identity of the Subject, see Parties'
Joint Letter to the Court, ECF No. 17.

**II.**

"Summary judgment is the procedural vehicle by which most
FOIA actions are resolved." BuzzFeed, Inc. v. U.S. Dep't of
Justice, No. 17-cv-7949, 2019 WL 1114864, at *2 (S.D.N.Y. Mar.
11, 2019).[2] "The court shall grant summary judgment if the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a). The moving party bears the initial burden of
"informing the district court of the basis for its motion" and
identifying the materials in the record that "it believes
demonstrate the absence of a genuine issue of material fact."
Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). At the

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all
alterations, citations, footnotes, and internal quotation marks in quoted
text.

summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

For an agency to prevail on a summary judgment motion in a FOIA case, it must demonstrate that each piece of information it seeks to withhold "has been produced, is unidentifiable, or is wholly exempt from [FOIA's] inspection requirements." BuzzFeed, 2019 WL 1114864, at *2. "Summary judgment in favor of the FOIA plaintiff is appropriate when an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption, but should be denied if the agency satisfies its burden to show that requested material falls within a FOIA exemption." Id.

### III.

FOIA "requires courts to balance the rights of citizens to gain access to information that their federal government collects against the privacy interests of individuals and government employees discussed in the same information." Perlman v. U.S. Dep't of Justice, 312 F.3d 100, 103 (2d Cir. 2002), vacated, 541 U.S. 970 (2004), reaff'd on remand, 380 F.3d 110

4

(2d Cir. 2004). FOIA "adopts as its most basic premise a policy strongly favoring public disclosure of information in the possession of federal agencies. To that end, FOIA requires federal government agencies to make available to the public an assortment of agency records." Id. at 104-05 (citing 5 U.S.C. § 552(a)).

Two of the nine statutory exemptions from disclosure are implicated in this case. Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id. § 552(b)(6). "An agency challenging a FOIA request bears the burden of showing that a claimed exemption applies." Perlman, 312 F.3d at 105 (citing 5 U.S.C. § 552(a)(4)(B)). The agency's decision is reviewed de novo. 5 U.S.C. § 552(a)(4)(B). "[Courts] interpret FOIA exemptions narrowly because disclosure, not secrecy, is the dominant objective of FOIA." Perlman, 312 F.3d at 105.

**IV.**

"[R]eview of a claim under Exemption 7(C) involves two steps: a document must first be shown to have been compiled for a law enforcement purpose, and if so, the agency must also demonstrate that release of the material would result in one of the harms specified in the FOIA." Id. As the plaintiff appears to concede, the Report was compiled for a law enforcement purpose. The Report, like the report of investigation in Perlman, is "eligible to be categorized as a law enforcement record because an Inspector General of a federal government agency engages in law enforcement activities within the meaning of FOIA." Id. Moreover, "the Report involved a complaint of alleged employee misconduct, including alleged sexual harassment and misuse of personnel resources, the OIG investigated the complaint to determine whether there had been any violation of law, regulation, or policy, and the Report reflects the OIG's factual findings and conclusions regarding the complaint." Waller Decl. ¶ 10. Accordingly, the Report was compiled for a law enforcement purpose and the Court will consider the potential harm in its release in Section V below.

Under Exemption 6, an agency may withhold "personnel and medical files and similar files" if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The statutory language concerning files 'similar' to

6

personnel or medical files has been read broadly by the Supreme
Court to encompass any 'information which applies to a
particular individual sought from Government records.'"
BuzzFeed, 2019 WL 1114864, at *3 (quoting U.S. Dep't of State v.
Wash. Post Co., 456 U.S. 595, 602 (1982)). The Report is a
"similar file" under Exemption 6 because it is a "detailed
Government record" containing identifying information about the
Subject and his alleged misconduct. See Perlman, 312 F.3d at
106.

     Although both Exemptions 6 and 7(C) are implicated in this
case, "Exemption 7(C) is more protective of privacy than
Exemption 6, because Exemption 7(C) applies to any disclosure
that could reasonably be expected to constitute an invasion of
privacy that is unwarranted." BuzzFeed, 2019 WL 1114864, at *3;
see also Stern v. F.B.I., 737 F.2d 84, 91 (D.C. Cir. 1984)
("Unlike exemption 6, which permits nondisclosure only when a
document portends a 'clearly unwarranted invasion of personal
privacy,' exemption 7(C) does not require a balance tilted
emphatically in favor of disclosure."). Accordingly, the
challenged redactions are proper if they satisfy Exemption 7(C),
and the Court need only evaluate the redactions under Exemption
7(C). See U.S. Dep't of Justice v. Reps. Comm. For Freedom of
Press, 489 U.S. 749, 762 n.12 (1989); Perlman, 312 F.3d at 106;
BuzzFeed, 2019 WL 1114864, at *3.

**V.**

**A.**

Under Exemption 7(C), the Court "must balance the public
interest in disclosure against the [privacy] interest Congress
intended the Exemption to protect." Reps. Comm., 489 U.S. at
776. First, the Court must determine "whether there is any
privacy interest in the information sought." BuzzFeed, 2019 WL
1114864, at *4. "Only where a privacy interest is implicated
does the public interest for which the information will serve
become relevant and require a balancing of the competing
interests." Fed. Lab. Rels. Auth. v. U.S. Dep't of Veterans
Affs., 958 F.2d 503, 509 (2d Cir. 1992). "[O]nce a more than de
minimis privacy interest is implicated the competing interests
at stake must be balanced in order to decide whether disclosure
is permitted under FOIA." Id. at 510.

"The privacy side of the balancing test is broad and
encompasses all interests involving the individual's control of
information concerning his or her person." Wood v. F.B.I., 432
F.3d 78, 88 (2d Cir. 2005) (Sotomayor, J.). "It is well
established that identifying information such as names,
addresses, and other personal information falls within the ambit
of privacy concerns under FOIA." Associated Press v. U.S. Dep't
of Defense, 554 F.3d 274, 285 (2d Cir. 2009). "[W]hether the
disclosure of names of government employees threatens a

8

significant privacy interest depends on the consequences likely
to ensue from disclosure." Wood, 432 F.3d at 88. "An
individual's privacy interest is particularly pronounced where
disclosure could lead to embarrassment or retaliation."
Associated Press, 554 F.3d at 286. This is true even when an
individual is alleged to have committed substantial misconduct.
See, e.g., id. at 288 (finding that Guantanamo Bay detainees
alleged to have abused other detainees had "a significant
privacy interest in keeping their identities undisclosed,"
"[e]ven more so than the victims of this alleged abuse"). Here,
the reputational harm, embarrassment, and potential retaliation
that the Subject would face from the disclosure of his identity
are privacy interests recognized by Exemption 7(C). The
Subject's privacy interest is increased because he has retired
and is now a private citizen. See Am. Immigr. Laws. Ass'n v.
Exec. Office for Immigr. Review, 830 F.3d 667, 675 (D.C. Cir.
2016).[3] Accordingly, significant privacy interests are implicated
by disclosure of the Subject's identity.

"As for the public interest against which the privacy
interest is to be weighed, the Supreme Court has made clear that
there is only one relevant interest, namely, 'to open agency

---

[3] To the extent that the cases cited discuss the privacy interests that are
recognized by Exemption 6, such privacy interests are also recognized by
Exemption 7(C). See Associated Press, 554 F.3d at 284 n.9; Stern, 737 F.2d at
91.

action to the light of public scrutiny.'" <u>Associated Press</u>, 554 F.3d at 285 (quoting <u>Reps. Comm.</u>, 489 U.S. at 772). Revealing the identities of government officials who have committed misconduct can advance this public interest. <u>See</u> <u>BuzzFeed</u>, 2019 WL 1114864, at *5 ("[R]edacting the identities of government officials engaged in wrongdoing [is] 'inappropriate' because 'identifying information is crucial to the public's interest in holding such officials accountable.'" (quoting <u>Cochran v. United States</u>, 770 F.2d 949, 956 n.9 (11th Cir. 1985))); <u>see also</u> <u>Stern</u>, 737 F.3d at 92 (recognizing the "public interest in the disclosure of the identities of the censured employees . . . in order to hold the governors accountable to the governed"); <u>Chang v. Dep't of the Navy</u>, 314 F. Supp. 2d 35, 43 (D.D.C. 2004) (same). Accordingly, there is a public interest in disclosure that must be weighed against the relevant privacy interests.

"Whether the public interest in disclosure warrants the invasion of personal privacy is determined by the degree to which disclosure would further the core purpose of FOIA, which focuses on 'the citizens' right to be informed about what their government is up to.'" <u>BuzzFeed</u>, 2019 WL 1114864, at *4 (quoting <u>U.S. Dep't of State v. Ray</u>, 502 U.S. 164, 177 (1991)).

> Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the public interest sought to be advanced is a

significant one, an interest more specific than having
the information for its own sake. Second, the citizen
must show the information is likely to advance that
interest. Otherwise, the invasion of privacy is
unwarranted.

Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172

(2004); see also Associated Press, 554 F.3d at 288 ("[O]nce a

privacy interest is identified, disclosure is unwarranted under

Exemption 7(C) unless the requester can show a sufficient reason

for the disclosure.").

In Perlman, the Second Circuit Court of Appeals set forth

five factors that a court should consider in balancing the

government employee's privacy interest against the public's

interest in disclosure: "(1) the government employee's rank; (2)

the degree of wrongdoing and strength of evidence against the

employee; (3) whether there are other ways to obtain the

information; (4) whether the information sought sheds light on a

government activity; and (5) whether the information sought is

related to job function or is of a personal nature." 312 F.3d at

107. This list of factors is non-exhaustive and no one factor is

dispositive. Id.[4]

---

[4] DOJ argues that the Court need not balance the private and public interests
because the plaintiff has failed to identify any significant public interest
that would be furthered by disclosure. See ECF No. 20, at 13-15. But, as
explained above, there is a public interest in disclosure that must be
weighed against the relevant privacy interests.

**B.**

**1. Rank of government employee**

"'[T]he level of responsibility held by a federal employee[]' is an 'appropriate consideration' when analyzing disclosure." Id. (quoting Stern, 737 F.2d at 92). Courts have drawn distinctions between "political appointees or senior managers and mere staff-level career civil servants." BuzzFeed, 2019 WL 1114864, at *6.

This factor cuts in favor of disclosure in this case. While the Subject did not hold a rank as high as the official in Perlman (Immigration and Naturalization Service ("INS") general counsel), the Subject was a member of the DOJ's Senior Executive Service and was the most senior person in his office. See Waller Decl. ¶ 16. The Subject's rank is comparable to that of other officials whose ranks courts have found to favor disclosure. See, e.g., Stern, 737 F.2d at 93–94 (Federal Bureau of Investigation ("FBI") Special Agent in Charge); BuzzFeed, 2019 WL 1114864, at *6 (supervisory Assistant United States Attorney); Eberg v. U.S. Dep't of Defense, 193 F. Supp. 3d 95, 118 (D. Conn. 2016) (colonel in the United States military). And while DOJ argues that the Subject's retirement prior to the release of the Report affects the consideration of this factor, courts have found that an official's high rank favors disclosure even if the official no longer serves in that position, see

<u>Perlman</u>, 312 F.3d at 107; <u>BuzzFeed</u>, 2019 WL 1114864, at *6. Accordingly, the Subject's rank and supervisory responsibilities favor disclosure.


**2. Degree of wrongdoing and strength of evidence against the employee**

The second factor "requires a court to examine the degree of wrongdoing allegedly committed by the employee and the strength of the evidence. Strong evidence of wrongdoing, combined with a serious offense, would weigh in favor of disclosure." <u>Perlman</u>, 312 F.3d at 107.

Here, OIG found by a preponderance of the evidence that the Subject made inappropriate comments of a sexual nature to a subordinate on three occasions, kissed another subordinate on the lips and made inappropriate comments to her, and asked employees to drive him on personal business and take his car to a carwash. This conduct is undoubtedly serious. However, the FOIA officer aptly notes that the Subject's conduct, "while wrongful, did not rise to the level of more serious misconduct that may weigh in favor of disclosure of not only the underlying details of the misconduct, but the identity of the employee who committed the misconduct as well." Waller Decl. ¶ 16.

This case is readily distinguishable from other cases where the seriousness of the conduct favored disclosure. In <u>Perlman</u>,

"a substantial amount of evidence show[ed] that" the former INS general counsel "allowed former INS officials with financial interests in [an investor visa program] to exercise improper influence over the program's administration." 312 F.3d at 107. Moreover, the former general counsel's conduct "may have allowed aliens to improperly come to the United States." Id. In this case, there is no evidence that the Subject's improper behavior affected the administration of federal law or any government program.

In Stern, the Court of Appeals for the District of Columbia Circuit ordered the disclosure of the name of an FBI Special Agent in Charge ("SAC") who knowingly participated in a cover-up during an audit of the FBI's domestic intelligence program by the General Accounting Office ("GAO"). See 737 F.2d at 87. The FBI Director concluded that the SAC "participat[ed] in acts that resulted in the FBI's not making a full and timely disclosure of surreptitious entries" and that the SAC "should have been aware that the result of [his] action would be a misrepresentation to GAO." Id. at 93. There is no evidence in this case that the Subject concealed large-scale misconduct or attempted to hinder a government investigation.

In BuzzFeed, the OIG report regarding a consensual affair between a former United States Attorney and a supervisory Assistant United States Attorney found, among other things, that

14

the affair: created an "unbearable atmosphere" in the United States Attorney's Office and caused several employees to label the office a hostile work environment, caused disparate treatment regarding bonuses and discipline, embarrassed and distracted other employees, caused rumors to be discussed by special agents and members of the federal court, and resulted in many employees feeling extremely stressed and powerless. 2019 WL 1114864, at *7. In this case, there is no evidence that the Subject's inappropriate conduct negatively impacted the entire office or anyone other than the people at whom the conduct was directed.

Any sexual harassment is unquestionably serious and the strength of the evidence against the Subject is strong. However, the misconduct here does not rise to the level of misconduct that other courts have found to favor disclosure of the employee's identity. Accordingly, this factor does not favor disclosure.

## 3. Availability of other means to obtain the information

DOJ does not argue that the Subject's identity is available elsewhere. Rather, DOJ argues that this factor is "inapplicable" to cases such as this one where the agency is withholding a person's identity. ECF No. 20, at 18. The Court sees no reason why the type of information sought by the plaintiff should

affect the applicability of this factor. Because it is undisputed that the Government is "the only means for obtaining the desired information," this factor favors disclosure. Perlman, 312 F.3d at 108; see also BuzzFeed, 2019 WL 1114864, at *8.


**4. Whether the information sought sheds light on government activity**

"This factor examines whether the information sought furthers FOIA's main purpose of opening agency action to the light of public scrutiny. The more the information sought sheds light on what the government is doing, the more this factor favors disclosure." Perlman, 312 F.3d at 108; see also Reps. Comm., 489 U.S. at 773 ("Official information that sheds light on an agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose.").

The disclosure sought in this case is simply the identity of the Subject. All other details of the Report on what the Subject did have already been disclosed and are open to public scrutiny. Disclosing the Subject's identity would not shed significant light on government activity.

As discussed above concerning the second factor, this case is distinguishable from those ordering disclosure where the subject's misconduct reflected on broader government activity.

16

In Perlman, this factor favored disclosure because, while the report of investigation discussed the former INS general counsel "extensively, the discussion focuse[d] on his role as INS general counsel. The [report of investigation] investigate[d] the extent to which former INS officials were able to obtain preferential treatment, undue access and exercise improper influence over the administration of [an investor visa program] through their contract with [the former general counsel]." 312 F.3d at 108. And the withheld portions of the documents discussed the allegedly improper activities of the former INS general counsel rather than simply his identity. In Stern, the SAC was found to have knowingly participated in a cover-up of "the FBI's wide-spread illegal surveillance of political activists through the use of surreptitious entries and wiretappings." 737 F.2d at 86. In BuzzFeed, the court concluded that disclosure of the employees' identities would shed light on how the employees' "misconduct affected their abilities to fulfill their professional responsibilities, and the impact that misconduct had on the operation of the Office." 2019 WL 1114864, at *8. This case, by contrast, involves discrete instances of harassment and inappropriate comments; the Report does not indicate that the Subject's misconduct affected any action taken by the Subject's agency, the administration of any government program, or the entire office that the Subject oversaw.

17

Accordingly, disclosure of the Subject's identity would not shed light on the agency's performance of its statutory duties. The core purpose of FOIA is not furthered by the disclosure of information "that reveals little or nothing about an agency's own conduct." Reps. Comm., 489 U.S. at 773.

In considering this factor, it is significant that the public "interest in knowing the identity of [the] disciplined employee[] is distinguishable from other public interests that may arise in requests for disclosure of government investigatory records." Stern, 737 F.2d at 92. As the court recognized in Stern, when only the disclosure of an employee's identity is at issue, the public interests in knowing that a government investigation is comprehensive, that the public report is accurate, and that adequate discipline was imposed are not implicated. Id. The public interest is limited to holding "the governors accountable to the governed." Id. "In the context of addressing whether disclosure of redacted names and identifying information is warranted, the Supreme Court has explained that where disclosure of the documents themselves adequately serve the public interest, a requester must show how 'the addition of the redacted identifying information' would 'shed any additional light on the Government's conduct.'" Associated Press, 554 F.3d at 288 (quoting Ray, 502 U.S. at 178).

In this case, the disclosure of the Report, without the identity of the Subject, sufficiently informs the public with respect to any impact that the Subject's misconduct had on government activity. The Report also discloses the facts necessary to assess the conduct of the investigation and the fact that the Subject retired during the investigation. This case is therefore unlike cases like Eberg, where the records requested "would open the [agency's] handling of sexual misconduct complaints to the light of public scrutiny." 193 F. Supp. 3d at 118. The Report already released in this case already does that. The plaintiff has failed to show that the addition of the redacted identifying information would shed significant light on the Government's conduct. Accordingly, this factor weighs against disclosure.

## 5. Whether the information is related to job function, or is of a personal nature

The fifth factor "is related to the government activity factor because the purpose of FOIA is to shed light on public rather than private activity. FOIA is not a tool to obtain personal information about government employees. Rather, the disclosed information must relate to the employee's performance of his public duties." Perlman, 312 F.3d at 108.

The information sought in this case – the Subject's identity – is personal in nature. While the Subject's misconduct, including harassment in the workplace, plainly relates to the Subject's job function, the Government has already disclosed all the information in the Report that fairly can be said to shed light on government activity: namely, the extent of the Subject's wrongdoing, its effect on the Subject's agency, and the Government's investigation into the allegations against the Subject. As DOJ correctly notes, "While the facts and circumstances surrounding sexual harassment by superiors in the workplace are almost always work-related, the names of those involved in such incidents (if they are not already publicly known) may nonetheless be personal information entitled to protection." ECF No. 27, at 15. Moreover, the Report focuses on discrete incidents that apparently did not impact the functioning of the Subject's agency. Accordingly, disclosure of the Subject's identity would not shed light on how the Subject performed his official responsibilities. Cf. Am. Immigr. Laws. Ass'n v. Exec. Office for Immigr. Review, 281 F. Supp. 3d 23, 29 (D.D.C. 2017) ("The public has a comparatively higher interest when the allegations concern in-court behavior, whereas the judge has a comparatively higher privacy interest when the allegations concern out-of-court behavior such as a judge's interactions with his staff[.]").

The plaintiff cites the court's statement in Eberg that "[s]exual harassment by a superior in the workplace is not information of a personal nature, and is most certainly related to that superior's job function." 193 F. Supp. 3d at 118. While that statement is true, the interests being balanced in this case are substantially different from those that were at issue in Eberg. There, the agency refused to acknowledge whether any responsive records existed concerning complaints of sexual assault, harassment, and equal opportunity violations against a particular colonel. See id. at 116–18. The public interest in disclosure in this case is far less significant because the extent of the Subject's wrongdoing and its impact on agency action is clear from the redacted Report. This case is also unlike the situation in BuzzFeed, where the affair "affected the day-to-day functioning of the Office as knowledge of the affair was clearly widespread and created, among other things, an 'embarrassing' professional atmosphere, disparate treatment regarding bonuses and disciplinary actions, and a 'hostile' work environment," as described by several employees. 2019 WL 1114864, at *7, *9 (quoting the OIG report at issue).

Accordingly, the information that is subject to disclosure in this case – the Subject's identity – is personal, and the information in the Report concerning the Subject's job function has already been disclosed. This factor favors nondisclosure.

21

**Balancing the factors**

On balance, the identity of the Subject was properly redacted pursuant to Exemption 7(C). Disclosure of the Subject's identity "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). While some of the <u>Perlman</u> factors favor disclosure in this case and the Court must interpret FOIA exemptions narrowly, <u>Perlman</u>, 312 F.3d at 105, the plaintiff has failed to show that disclosure of the Subject's identity would further "FOIA's main purpose of opening agency action to the light of public scrutiny," <u>id.</u> at 108, to an extent that outweighs the Subject's significant privacy interests.[5] The Report, with the Subject's name redacted, already addresses the public's interest in knowing what their Government is up to: namely, what sort of misconduct occurred within DOJ and how that misconduct was investigated. The additional public interest in knowing <u>who</u> committed this misconduct does not further those interests and does not shed light on the agency's performance of its statutory

---

[5] DOJ argues, and the FOIA officer found, that disclosure of the Subject's identity could reveal the identities of the witnesses mentioned in the Report and the victims of the Subject's harassment. <u>See</u> ECF No. 20, at 12–13; Waller Decl. ¶ 13. The names of the witnesses and victims are redacted in the Report, and those redactions are not challenged here. DOJ's concern is somewhat speculative. In any event, any weight afforded to these third-party interests does not affect the outcome of this case because the Court concludes that the privacy interests of the Subject significantly outweigh the public interest in disclosure.

duties. Therefore any public interest furthered by disclosure is significantly outweighed by the Subject's privacy interests.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed above, the arguments are either moot or without merit. For the reasons explained above, the plaintiff's motion for summary judgment is **denied** and DOJ's motion for summary judgment is **granted.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:    **New York, New York**
          **June 20, 2022**

                                        **John G. Koeltl**
                                  **United States District Judge**